Judith A. JOSLIN, Plaintiff,

v.

ROCKWELL INTERNATIONAL
CORPORATION,
Defendant.

No. C97–0090.

United States District Court,
N.D. Iowa,
Cedar Rapids Division.

June 3, 1998.

Matthew Glasson, Glasson, Sole, McManus & Combs, Cedar Rapids, IA, for Plaintiff.

Wilford H. Stone, Lynch, Dallas, Smith & Harman, P.C., Cedar Rapids, IA, for Defendant.

## ORDER

JARVEY, United States Magistrate Judge.

This matter comes before the court pursuant to the defendant's April 15, 1998 motion for summary judgment (docket number 21). The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court held oral argument on this motion on May 29, 1998, at which the plaintiff was represented by Matthew Glasson. The defendant was represented by Wilford Stone. For the reasons set forth below, the court grants the motion for summary judgment.

In this case, the plaintiff, Judith A. Joslin, alleges that her employer, defendant Rockwell International Corporation, discharged her in May of 1996 in violation of the Family and Medical Leave Act (FMLA), 29 U.S.C. §§ 2601–2654 (1994). She was reinstated in August of 1996 after she grieved her termination. The defendant moves for summary judgment, arguing: (1) that the plaintiff is not covered by the FMLA because she does

not have a "serious health condition"; (2) that the plaintiff is not covered by the FMLA because she did not demonstrate that she was unable to perform the functions of her job; (3) that the plaintiff is not covered by the FMLA because she did not provide medical certification; and (4) that the plaintiff released this claim when she settled the grievance and signed the conditional reinstatement agreement in August 1996.

### Summary Judgment: The Standard

A motion for summary judgment may be granted only if, after examining all of the evidence in the light most favorable to the nonmoving party, the court finds that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *Kegel v. Runnels,* 793 F.2d 924, 926 (8th Cir.1986). Once the movant has properly supported its motion, the nonmovant "may not rest upon the mere allegations or denials of [its] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Fed. R.Civ.P.* 56(e). "To preclude the entry of summary judgment, the nonmovant must show that, on an element essential to [its] case and on which it will bear the burden of proof at trial, there are genuine issues of material fact." *Noll v. Petrovsky,* 828 F.2d 461, 462 (8th Cir.1987), *cert. denied,* 484 U.S. 1014, 108 S.Ct. 718, 98 L.Ed.2d 668 (1988) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986) (quoting *Impro Prod., Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)).

In the context of employment discrimination cases, summary judgment should be used sparingly. *Hardin v. Hussmann,* 45 F.3d 262, 264 (8th Cir.1995) (citations omitted). " 'Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant.'" *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995)(quoting *Crawford v. Runyon,* 37 F.3d 1338, 1340 (8th Cir.1994)). In applying these standards, the court must give the nonmoving party the benefit of all reasonable inferences to be drawn from the evidence. *Krause v. Perryman,* 827 F.2d 346, 350 (8th Cir.1987).

### Statement of Undisputed Material Facts

Plaintiff Judith Joslin began working for the defendant Rockwell International Corporation in Cedar Rapids in 1967. She is allergic to household dust, mites, and cat hair. The plaintiff has been treated for these allergies for more than ten years. During her tenure at Rockwell, the plaintiff has had chronic problems with absenteeism. Prior to May of 1996, she had been warned on a number of occasions that her absenteeism, if it continued, would result in her termination.

On Saturday, May 4, 1996, the plaintiff claims to have suffered an adverse reaction to an allergy shot. As a result, her arm became swollen and itchy. The following Monday, on May 6, 1998, the plaintiff did not report to work, choosing instead to call in sick. That same day, the plaintiff called her physician, Dr. Charles C. Kimura, and requested an appointment. Dr. Kimura's nurse denied the request for an appointment and told the plaintiff to simply take Tylenol and apply ice packs to the swollen area as needed for comfort. The plaintiff claims that the nurse also instructed her to use the arm as little as possible. The plaintiff admitted at her deposition that she was not instructed to stay home from work, and that no one from the doctor's office told her that she was too sick to work.

The plaintiff proceeded to call in sick on May 7, 1998 and May 8, 1998. She did not see Dr. Kimura on either day. On May 8, 1998, the plaintiff had a conversation with Dr. Kimura on the telephone. No restrictions from work were made at that time. The plaintiff claims that Dr. Kimura told her that he should have seen her on May 6, 1996, but Dr. Kimura did not indicate that any particular treatment was necessary or appro-

priate for the plaintiff's allergic reaction. Dr. Kimura provided an authorization to return to work form stating that Ms. Joslin had been under medical care from May 6, 1996, until May 8, 1996, and that she could return to work on May 9, 1996, without restrictions. This authorization to return to work (Exhibit J to the motion for summary judgment) is inaccurate because that it is undisputed that the plaintiff was not under medical care during that period of time. The court cannot find that this authorization carries with it some implication that the plaintiff was unable to work between May 6 and May 8, 1996.

The plaintiff's employment was terminated on or about May 10, 1996, for excessive absenteeism (Exhibit C). She grieved the matter on May 13, 1996 (Exhibit I), and ultimately the plaintiff's employment was reinstated by agreement of the parties on August 21, 1996. The conditional reinstatement agreement required the plaintiff to achieve less than 3% absenteeism and adhere to FMLA guidelines. She was not awarded back pay and nothing was said about a release of or her ability to maintain an action under the FMLA.

### Conclusions of Law

The FMLA allows eligible employees to take up to a total of 12 workweeks of leave per year under various circumstances, including when an employee has a "serious health condition" that renders the employee unable to perform the functions of his or her job. 29 U.S.C. § 2612(a)(1)(D). The FMLA defines a "serious health condition" as an illness, injury, impairment, or physical or mental condition that involves either inpatient care or continuing treatment by a health care provider. See 29 U.S.C. § 2611(11)(B). This case did not involve inpatient care. Accordingly, the court must decide whether the plaintiff was absent from work on May 6–8, 1996 because of a serious health condition involving "continuing treatment by a health care provider."

Continuing treatment by a health care provider can be established in any one of five ways under the regulations interpreting the FMLA. 29 C.F.R. § 825.114(a)(2). The plaintiff contends that she qualifies under these regulations because she suffered from a period of incapacity due to a chronic serious health condition. 29 C.F.R. § 825.114(a)(2)(iii). The threshold question that the court must address, therefore, is whether the plaintiff actually suffered from a period of incapacity. See Martyszenko v. Safeway, Inc., 120 F.3d 120, 123 (8th Cir.1997)(finding that an individual must be incapacitated to have a "serious health condition" under the FMLA).

■ For the purposes of the FMLA, incapacity is defined as the "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom." See 29 C.F.R. § 825.114(a)(2)(i). The plaintiff has the burden of demonstrating that she was incapacitated. See Olsen v. Ohio Edison Company, 979 F.Supp. 1159, 1165 (N.D.Ohio 1997). The court finds that, even construing the facts in a light most favorable to the plaintiff, the plaintiff has failed met her burden.

Fed.R.Civ.P. 56(e) states that, in order to avoid summary judgment, a party must present specific, admissible evidence showing that there is a genuine issue for trial. The plaintiff's claim that Dr. Kimura's nurse instructed her to "use her arm as little as possible" is inadmissible hearsay and, accordingly, cannot be relied on by this court. The plaintiff's claim that, on May 8, 1996, Dr. Kimura told her that he should have seen her on May 6, 1996 is also inadmissible hearsay.

The evidence in the record that is admissible is not favorable to the plaintiff. Dr. Kimura's May 6, 1996 office note entry (Exhibit E) makes no mention of the plaintiff being instructed to not use her arm. The plaintiff admitted at her deposition that she was not instructed to stay home from work, and that no one from Dr. Kimura's office told her that she was too sick to work. She described her arm as painful, itchy and swollen. The only conclusion that can be drawn from this evidence is that staying home from work was solely the plaintiff's decision.

■ The only testimony in the record suggesting that the plaintiff was unable to work was from the plaintiff herself. Such testimony is not enough to prove incapacitation. See Olsen, 979 F.Supp. at 1166 (stat-

ing that one's own claim that one cannot work because of illness is not sufficient to show incapacity under the FMLA); *Brannon v. OshKosh B'Gosh, Inc.,* 897 F.Supp. 1028, 1037 (M.D.Tenn.1995)(stating that the plaintiff's testimony that she was too sick to work was insufficient to satisfy her burden on summary judgment). Under the FMLA, a plaintiff employee must be able to show that " 'a health provider' made a professional assessment of his [or her] condition and determined, based on that assessment, that an extended absence from work was necessary." *Olsen,* 979 F.Supp. at 1166. The plaintiff in this case is unable to make such a showing because her condition was never professionally assessed.

The FMLA codified the employee's obligation to provide certification *from a health care provider* when demanded by the employer. 29 U.S.C. § 2613. Plaintiff could not do so and still cannot as she never saw a health care provider for this condition. She was able to get the doctor to say she could go to work on May 9, 1996. The fact that he would not see her cannot somehow assist the plaintiff's case at this point.

The court finds no medical evidence in the record supporting the plaintiff's contention that she was incapacitated on May 6–8, 1996. Without proof of incapacitation, the plaintiff cannot prove that she suffered from the type of "serious health condition" covered by 29 U.S.C. § 2612(a)(1)(D). Because the plaintiff cannot demonstrate that she qualified under 29 U.S.C. § 2612(a)(1)(D), her FMLA claim must fail. Summary judgment is appropriate in this case. Accordingly, the court grants the defendant's motion.

Upon the foregoing,

IT IS ORDERED

Defendant's April 15, 1998 motion for summary judgment (docket number 21) is granted. This case is dismissed. The Clerk of Court shall enter judgment accordingly.